DMB/CK:CMP/VR
F.#2011R00772

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

NICOLAE POPESCU,
    also known as "Nae" and
    "Nicolae Petrache,"
DANIEL ALEXE,
DMITRU DANIEL BOSOGIOIU,
    also known as
    "Dmitru Busogioiu" and
    "Ioghi,"
EMIL BUTOI,
    also known as
    "Emil Popescu,"
AUREL COJOCARU,
OVIDIU CRISTEA,
    also known as "Ica,"
NICOLAE GHEBOSILA,
    also known as "Nicu Lutac,"
    "Nicu A Lui Tac" and
    "Nicu Tac,"
FABJAN MEME,
    also known as
    "Fabian Meme,"
    "Fabjan Mema" and
    "Fabjan Maluka,"
CRISTEA MIRCEA,
ION PIEPTEA,
DRAGOMIR RAZVAN,
    also known as "One Arm,"
NICOLAE SIMION,
    also known as "Schilodul"
    and "Skilodul," and
FNU LNU,
    also known as
    "George Skyper" and
    "Tudor Barbu Lautaru,"

        Defendants.

- - - - - - - - - - - - - - - - - X

## I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982(a)(1),
982(a)(6), 1343, 1543,
1956(a)(1)(A)(i),
1956(a)(1)(B), 1957(a),
1957(b), 1957(d)(1),
2320(a)(1), 2 and 3551
et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

At all times relevant to this Indictment, unless otherwise indicated:

<u>The Fraudulent Scheme</u>

1.     In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," DANIEL ALEXE, DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," EMIL BUTOI, also known as "Emil Popescu," AUREL COJOCARU, OVIDIU CRISTEA, also known as "Ica," NICOLAE GHEBOSILA, also known as "Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," CRISTEA MIRCEA, ION PIEPTEA, DRAGOMIR RAZVAN, also known as "One Arm," NICOLAE SIMION, also known as "Schilodul" and "Skilodul," and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," together with others, organized and participated in a criminal scheme targeting victims by way of fraudulent advertisements on the Internet (the "fraudulent scheme").

2.     It was a part of the scheme that the defendants and their co-conspirators posted and arranged to post fraudulent advertisements for cars, motorcycles, boats and other high-value

2

items for sale on such Internet marketplace and auction websites as eBay.com, Cars.com, AutoTrader.com and CycleTrader.com. These advertisements often contained photographs and detailed descriptions of the advertised items. Unbeknownst to the victim buyers, however, these items did not exist, but were merely advertised to lure buyers into transferring funds to the defendants and their co-conspirators.

3.    In response to these fraudulent advertisements, interested buyers contacted the purported "sellers" of the items, and the parties generally communicated and negotiated primarily via email. The purported "sellers," often based in Romania or elsewhere outside of the United States, adopted false names for these communications. When the parties reached an agreement, the "sellers" often sent sales agreements and fraudulent certificates of title to the victim buyers.

4.    The purported "sellers" sent invoices, claiming to be from such online payment services as Amazon Payments, by email to the victims, instructing the victims where to transfer their payments. These invoices, however, were fraudulent; the defendants and their co-conspirators used counterfeit service marks in designing the invoices so that the invoices would appear identical to communications from legitimate payment services.

5.    The fraudulent invoices included wire transfer information, such as the names and addresses of the designated

3

wire transfer recipients in the United States, as well as the recipients' bank account numbers and routing numbers. These recipients, known as "arrows," resided in the United States but were often foreign nationals. In order to open bank accounts for the purposes of furthering the fraudulent scheme described herein, the "arrows" used false European passports and other fake identification documents procured from the defendants and their co-conspirators. These fraudulent identification documents included genuine photographs of the "arrows" but false names and other identifying information.

6. After obtaining the funds transferred by the victims, the "arrows" generally kept a percentage for themselves and transferred the rest to the defendants and their co-conspirators in Europe pursuant to directions provided by the defendants.

<u>The Defendants</u>

7. The defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," based primarily in Hungary and Romania, and DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," based primarily in Romania, managed, supervised and participated in the fraudulent scheme by disseminating and directing their co-conspirators to disseminate false and fraudulent information that was intended to cause online marketplace victims to send money for nonexistent goods

advertised on the Internet; laundering and directing their co-conspirators to launder the proceeds of the fraudulent scheme; and using and distributing false passports and other identification documents for the purpose of opening United States bank accounts in false names.

8.   The defendants EMIL BUTOI, also known as "Emil Popescu," based primarily in the United Kingdom and Romania, AUREL COJOCARU, based primarily in the Czech Republic and Romania, and FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," based primarily in the Czech Republic and Romania, participated in the fraudulent scheme by manufacturing and distributing false passports and other identification documents, which enabled the recipients of such documents to open United States bank accounts in false names in order to receive payments from victims and then transfer the criminal proceeds of the fraudulent scheme to their co-conspirators in Europe.  COJOCARU also participated in the fraudulent scheme by disseminating and directing his co-conspirators to disseminate false and fraudulent information that was intended to cause online marketplace victims to send money for nonexistent goods advertised on the Internet and laundering and directing his co-conspirators to launder the proceeds of the fraudulent scheme.

9.    The defendants DANIEL ALEXE, based primarily in Romania, NICOLAE GHEBOSILA, also known as "Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," based primarily in Canada and Romania, CRISTEA MIRCEA, based primarily in the United States and Romania, ION PIEPTEA, based primarily in Romania, DRAGOMIR RAZVAN, also known as "One Arm," based primarily in the United States and Romania, NICOLAE SIMION, also known as "Schilodul" and "Skilodul," based primarily in Romania, and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," based primarily in Romania, participated in the fraudulent scheme by disseminating and directing their co-conspirators to disseminate false and fraudulent information that was intended to cause online marketplace victims to send money for nonexistent goods advertised on the Internet; laundering and directing their co-conspirators to launder the proceeds of the fraudulent scheme; and using and distributing false passports and other fraudulent identification documents for the purpose of opening United States bank accounts in false names.

10.    The defendant OVIDIU CRISTEA, also known as "Ica," based in Germany and Romania, participated in the fraudulent scheme by laundering and directing co-conspirators to launder the proceeds of the fraudulent scheme.

COUNT ONE
(Conspiracy to Commit Wire Fraud, Money Laundering and
Passport Fraud and to Traffic in Counterfeit Service Marks)

11.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

12.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," DANIEL ALEXE, DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," EMIL BUTOI, also known as "Emil Popescu," AUREL COJOCARU, OVIDIU CRISTEA, also known as "Ica," NICOLAE GHEBOSILA, also known as "Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," CRISTEA MIRCEA, ION PIEPTEA, DRAGOMIR RAZVAN, also known as "One Arm," NICOLAE SIMION, also known as "Schilodul" and "Skilodul," and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," together with others, did knowingly and intentionally conspire: (1) to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings,

7

signs, signals, pictures and sounds, to wit: interstate and international wire transfers and Internet communications, contrary to Title 18, United States Code, Section 1343; (2) to conduct financial transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements under State and Federal law, contrary to Title 18, United States Code, Section 1956(a)(1)(B); (3) to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in

8

violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a); (4) to falsely make, forge and counterfeit passports and instruments purporting to be passports, with the intent that the same would be used, and to use, attempt to use and furnish to another for use such false, forged and counterfeited passports, contrary to Title 18, United States Code, Section 1543; and (5) to traffic in goods and services, and knowingly use counterfeit marks, to wit: Amazon.com service marks, on and in connection with such services, contrary to Title 18, United States Code, Section 2320(a)(1).

13. In furtherance of the conspiracy and to effect its objects, the defendants, together with others, committed and caused to be committed, within the Eastern District of New York and elsewhere, the following overt acts:

<u>OVERT ACTS</u>

a. In or about and between August 2011 and March 2012, within the Eastern District of New York, John Doe, an individual whose identity is known to the grand jury, opened bank accounts at Citibank (the "Citibank Accounts") at the direction of, and using fraudulent passports provided by, the defendant NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache." These accounts were used to receive victim funds and transfer criminal proceeds to the defendants.

b.    In or about and between May 2011 and March 2012, within the Southern District of New York and the District of New Jersey, John Doe opened bank accounts at J.P. Morgan Chase (hereinafter "Chase") branches (the "Chase Accounts") at the direction of, and using fraudulent passports provided by, POPESCU.  These accounts were used to receive victim funds and transfer criminal proceeds to the defendants.

c.    In or about and between May 2011 and December 2011, within the Southern District of New York and the District of New Jersey, John Doe opened bank accounts at Bank of America (the "Bank of America Accounts"), Capital One Bank (the "Capital One Accounts"), TD Bank (the "TD Bank Accounts") and Wells Fargo (the "Wells Fargo Accounts") at the direction of, and using fraudulent passports provided by, POPESCU.  These accounts were used to receive victim funds and transfer criminal proceeds to the defendants.

d.    On or about April 28, 2011, within the Central District of California, the defendant CRISTEA MIRCEA, using fraudulent identification, opened a bank account at Wells Fargo (the "Mircea Wells Fargo Account") in order to facilitate the fraudulent scheme.

e.    On or about May 17, 2011, Victim #8, whose identity is known to the grand jury, transferred

10

approximately $24,900 from a bank in Indiana to the Mircea Wells Fargo Account ("Victim #8 Funds").

f.   On or about May 17, 2011, the defendant MIRCEA made cash withdrawals and a bank transfer of a portion of the Victim #8 Funds from the Mircea Wells Fargo Account.

g.   On or about May 17, 2011, Victim #9, whose identity is known to the grand jury, transferred approximately $26,500 from a bank in North Carolina to a Bank of America account in the name of "David Rundle."

h.   On or about and between May 24, 2011 and May 25, 2011, POPESCU notified John Doe that John Doe would soon receive funds into the Wells Fargo and Bank of America Accounts from victims of the fraudulent scheme.

i.   On or about May 27, 2011, within the Central District of California, the defendant DRAGOMIR RAZVAN, also known as "One Arm," possessed a fraudulent passport in the name of "David Rundle," which was used in the course of the fraudulent scheme.

j.   On or about May 31, 2011, Victim #1, whose identity is known to the grand jury, transferred approximately $19,600 from a bank in Michigan to one of the Bank of America Accounts ("Victim #1 Funds").

k.   On or about June 2, 2011, within the Eastern District of New York, at the direction of POPESCU, John

11

Doe withdrew a portion of the Victim #1 Funds from a bank and then transferred these funds to POPESCU in Europe.

l.   On or about July 28, 2011, POPESCU notified John Doe that John Doe would be receiving a watch, which represented proceeds of the fraudulent scheme.

m.   On or about July 30, 2011, the defendant OVIDIU CRISTEA, also known as "Ica," notified John Doe that John Doe would be receiving additional watches, which represented proceeds of the fraudulent scheme.

n.   On or about August 22, 2011, Victim #2, whose identity is known to the grand jury, transferred approximately $36,000 from a bank in Montana to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #2 Funds").

o.   On or about August 23, 2011 and August 24, 2011, within the Eastern District of New York, at the direction of POPESCU, John Doe withdrew a portion of the Victim #2 Funds from a bank and then transferred these funds to POPESCU in Europe.

p.   On or about September 9, 2011, the defendant DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," informed John Doe that Victim #11, whose identity is known to the grand jury, had transferred

approximately $33,500 from a bank in Minnesota to one of the Chase Accounts.

   q. On or about September 9, 2011, Victim #10, whose identity is known to the grand jury, transferred approximately $42,900 from a bank in Pennsylvania to one of the Chase Accounts ("Victim #10 Funds").

   r. On or about September 12, 2011, at the direction of BOSOGIOIU, John Doe withdrew a portion of the Victim #10 Funds and then transferred these funds to BOSOGIOIU in Europe.

   s. On or about May 8, 2012, the defendant NICOLAE SIMION, also known as "Schilodul" and "Skilodul," notified John Doe that John Doe would soon receive funds from a victim of the fraudulent scheme.

   t. On or about May 8, 2012, Victim #3, whose identity is known to the grand jury, transferred approximately $20,000 from a bank in Virginia to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #3 Funds").

   u. On or about May 9, 2012, at the direction of SIMION, John Doe withdrew a portion of the Victim #3 Funds and then sent these funds to Romania.

v.    On or about June 9, 2012, the defendant ION PIEPTEA notified John Doe that John Doe would soon receive funds from victims of the fraudulent scheme.

w.    On or about June 11, 2012, Victim #4, whose identity is known to the grand jury, transferred approximately $18,500 from a bank in Australia to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #4 Funds").

x.    On or about June 12, 2012 and June 13, 2012, at the direction of PIEPTEA, John Doe withdrew a portion of the Victim #4 Funds and then sent these funds, in cash, to PIEPTEA's brother in Romania.

y.    On or about June 23, 2012, PIEPTEA provided John Doe with contact information for the defendant AUREL COJOCARU so that John Doe could obtain false identification documents, including fraudulent passports, from COJOCARU.

z.    On or about June 25, 2012, COJOCARU introduced John Doe to the defendant FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru." FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," sought John Doe's assistance in receiving victim funds from the fraudulent scheme.

aa.    On or about June 25, 2012, SIMION introduced John Doe to the defendant DANIEL ALEXE, who managed a

14

team of "arrows" in Florida.  ALEXE told John Doe that ALEXE's "arrows" could receive victim funds from the fraudulent scheme.

   bb.  On or about June 27, 2012, FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," notified John Doe that John Doe would soon receive funds from a victim of the fraudulent scheme.

   cc.  On or about June 27, 2012, Victim #5, whose identity is known to the grand jury, transferred approximately $21,000 from a bank in Pennsylvania to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #5 Funds").

   dd.  On or about June 28, 2012, at the direction of FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," and COJOCARU, John Doe withdrew a portion of the Victim #5 Funds and then wired these funds to an account in the Czech Republic.

   ee.  On or about June 29, 2012 and July 10, 2012, COJOCARU showed John Doe fraudulent passports that COJOCARU had created for John Doe.

   ff.  On or about July 18, 2012, COJOCARU provided John Doe with tracking numbers for shipments of fraudulent passports that COJOCARU had arranged to send to John Doe in the United States.

gg.   On or about July 25, 2012, the defendant FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," who was with SIMION at the time, told John Doe the price that MEME would charge for a fraudulent passport. SIMION provided an email address where John Doe could provide a photograph of himself to MEME for the purpose of creating a fraudulent passport.

hh.   On or about August 2, 2012, John Doe wired payment to MEME in the amount of approximately $1,600 for two false passports.

ii.   On or about September 10, 2012, SIMION provided John Doe with contact information for the defendant EMIL BUTOI, also known as "Emil Popescu," so that John Doe could obtain false identification documents, including fraudulent passports, from BUTOI.

jj.   On or about September 16, 2012, BUTOI told John Doe how much BUTOI charged for the production of a fraudulent passport.

kk.   On or about September 19, 2012, John Doe wired payment in the amount of approximately $1,850 to BUTOI as payment for two fraudulent passports.

ll.   On or about September 27, 2012, BUTOI provided John Doe with the tracking number for the shipment of fraudulent passports and other identification documents that BUTOI had arranged to send to John Doe in the United States.

16

mm. On or about September 28, 2012, ALEXE and SIMION notified John Doe that John Doe would soon receive funds from victims of the fraudulent scheme.

nn. On or about September 28, 2012, Victim #6, whose identity is known to the grand jury, transferred approximately $5,900 from a bank in Texas to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #6 Funds").

oo. On or about October 1, 2012, at the direction of ALEXE, John Doe withdrew a portion of the Victim #6 Funds and then wired these funds to Romania.

pp. On or about October 4, 2012, the defendant NICOLAE GHEBOSILA, also known as "Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," notified John Doe that John Doe would soon receive funds from a victim of the fraudulent scheme.

qq. On or about October 4, 2012, Victim #7, whose identity is known to the grand jury, transferred approximately $8,200 from a bank in Massachusetts to one of the Citibank Accounts previously opened in the Eastern District of New York ("Victim #7 Funds").

rr. On or about October 5, 2012, at the direction of GHEBOSILA, John Doe withdrew a portion of the Victim #7 Funds.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

17

## COUNTS TWO THROUGH EIGHT
(Wire Fraud)

14.     The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

15.     In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," DANIEL ALEXE, AUREL COJOCARU, NICOLAE GHEBOSILA, also known as Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," ION PIEPTEA, NICOLAE SIMION, also known as "Schilodul" and "Skilodul," and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

16.     For the purpose of executing such scheme and artifice, the defendants POPESCU, ALEXE, COJOCARU, GHEBOSILA, PIEPTEA, SIMION, and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate and international wire transactions, as set forth below:

18

| COUNT | DEFENDANT | APPROX. DATE | SOURCE OF FUNDS | RECIPIENT OF FUNDS | TYPE AND APPROX. AMOUNT OF TRANSACTION |
|---|---|---|---|---|---|
| TWO | POPESCU | June 2, 2011 | Victim #1, Members Credit Union, Traverse City, Michigan | "Daniel Marquez," Bank of America Account #483038684730, New York, New York | $8,000 withdrawal |
| THREE | POPESCU | August 22, 2011 | Victim #2, First Interstate Bank, Billings, Montana | "Milan Kross," Citibank Account #9995204618, Queens, New York | $36,000 transfer |
| FOUR | SIMION | May 8, 2012 | Victim #3, Citibank, Falls Church, Virginia | "Martin Kemp" Citibank Account #4968889479, Queens, New York | $20,000 transfer |
| FIVE | PIEPTEA | June 11, 2012 | Victim #4, National Australia Bank Ltd., Australia | "Martin Kemp" Citibank Account #4968889452, Queens, New York | $18,500 transfer |
| SIX | COJOCARU and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru" | June 27, 2012 | Victim #5, ACNB Bank, Gettysburg, Pennsylvania | "Melvin Kahn" Citibank Account #4968887764, Queens, New York | $21,000 transfer |
| SEVEN | ALEXE | Sept. 28, 2012 | Victim #6, Catalyst Corporate Federal Credit Union, Dallas, Texas | "Martin Kemp," Citibank Account #4968889444, Queens, New York | $5,900 transfer |
| EIGHT | GHEBOSILA | Oct. 4, 2012 | Victim #7, People's Bank, Holyoke, Massachusetts | "Melvin Kahn," Citibank Account #4968887764, Queens, New York | $8,200 transfer |

(Title 18, United States Code, Sections 1343, 2 and

3551 et seq.)

19

## COUNTS NINE AND TEN
(Wire Fraud)

17.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

18.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Central District of California, the defendants CRISTEA MIRCEA and DRAGOMIR RAZVAN, also known as "One Arm," together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

19.   For the purpose of executing such scheme and artifice, the defendants MIRCEA and RAZVAN, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate and international wire transactions, as set forth below:

| COUNT | DEFENDANT | APPROX. DATE | SOURCE OF FUNDS | RECIPIENT OF FUNDS | TYPE AND APPROX. AMOUNT OF TRANSACTION |
|---|---|---|---|---|---|
| NINE | MIRCEA and RAZVAN | May 17, 2011 | Victim #8, PNC Bank, Zionsville, Indiana | "David Ayres," Wells Fargo Account #2706425598, Ontario, California | $24,900 transfer |
| TEN | MIRCEA and RAZVAN | May 17, 2011 | Victim #9, Wells Fargo Advisors, Gastonia, North Carolina | "David Rundle," Bank of America Account #0943948334, Ontario, California | $26,500 transfer |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

<u>COUNTS ELEVEN THROUGH FOURTEEN</u>
(Wire Fraud)

20.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

21.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Southern District of New York, the defendants DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," EMIL BUTOI, also known as "Emil Popescu," and FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

21

22.    For the purpose of executing such scheme and artifice, the defendants BOSOGIOIU, BUTOI and MEME, together with others, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: interstate and international wire transactions, as set forth below:

| COUNT | DEFENDANT | APPROX. DATE | SOURCE OF FUNDS | RECIPIENT OF FUNDS | TYPE AND APPROX. AMOUNT OF TRANSACTION |
|---|---|---|---|---|---|
| ELEVEN | BOSOGIOIU | Sept. 9, 2011 | Victim #10, Bank of America, Scranton, Pennsylvania | "David Perez," JP Morgan Chase Account #99851057, New York, New York | $42,900 transfer |
| TWELVE | BOSOGIOIU | Sept. 9, 2011 | Victim #11, Wells Fargo, Minneapolis, Minnesota | "David Garcia," JP Morgan Chase Account #998512065, New York, New York | $33,500 transfer |
| THIRTEEN | MEME | Aug. 2, 2012 | Western Union Money Transfer Control Number 255-428-0129 New York, New York | "Fabian Mema" Czech Republic | $1,600 transfer |
| FOURTEEN | BUTOI | Sept. 19, 2012 | Western Union Money Transfer Control Number 702-359-7707 New York, New York | "Daniela Visa" Romania | $1,850 transfer |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

22

## COUNT FIFTEEN
(Passport Fraud)

23.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

24.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," and AUREL COJOCARU, together with others, did falsely make, forge and counterfeit passports and instruments purporting to be passports, with the intent that the same would be used, and use, attempt to use and furnish to another for use such false, forged and counterfeited passports.

(Title 18, United States Code, Sections 1543, 2 and 3551 et seq.)

## COUNT SIXTEEN
(Passport Fraud)

25.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

26.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the District of New Jersey, the defendants FABJAN MEME, also known as "Fabian Meme," "Fabjan Mema" and "Fabjan Maluka," and EMIL BUTOI, also known as "Emil Popescu," together with others, did falsely

23

make, forge and counterfeit passports and instruments purporting to be passports, with the intent that the same would be used, and use, attempt to use and furnish to another for use such false, forged and counterfeited passports.

(Title 18, United States Code, Sections 1543, 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Trafficking in Counterfeit Service Marks)

27.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

28.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the District of North Dakota and the District of South Carolina, the defendant NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," together with others, did knowingly and intentionally traffic in goods and services, and knowingly use counterfeit marks, to wit: Amazon.com service marks, on and in connection with such services.

(Title 18, United States Code, Section 2320(a)(1), 2 and 3551 et seq.)

## COUNT EIGHTEEN
(Money Laundering)

29.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

24

30.    In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," and DMITRU DANIEL BOSOGIOIU, also known as "Dmitru Busogioiu" and "Ioghi," together with others, did knowingly and intentionally engage in monetary transactions by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: deposits, withdrawals and transfers of funds and monetary instruments that were the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

## COUNT NINETEEN
(Money Laundering)

31.    The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

32.    In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Esatern District of New York and elsewhere, the defendants NICOLAE POPESCU, also known as "Nae" and "Nicolae Petrache," and OVIDIU CRISTEA, also known as "Ica," together with others, did

knowingly and intentionally engage in financial transactions, to wit: the purchase and transfer of luxury watches, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B).

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B), 2 and 3551 <u>et seq.</u>)

<u>COUNT TWENTY</u>
(Money Laundering)

33.    The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

34.    In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Central District of California, the defendants CRISTEA MIRCEA and

26

DRAGOMIR RAZVAN, also known as "One Arm," together with others, did knowingly and intentionally engage in monetary transactions in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: deposits, withdrawals and transfers of funds and monetary instruments that were the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

<u>COUNT TWENTY-ONE</u>
(Money Laundering)

35.  The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

36.  In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ION PIEPTEA, together with others, did knowingly and intentionally engage in monetary transactions, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful

27

activity, to wit: deposits, withdrawals and transfers of funds and monetary instruments that were the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

COUNT TWENTY-TWO
(Money Laundering)

37.    The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

38.    In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICOLAE GHEBOSILA, also known as "Nicu Lutac," "Nicu A Lui Tac" and "Nicu Tac," and NICOLAE SIMION, also known as "Schilodul" and "Skilodul," together with others, did knowingly and intentionally engage in monetary transactions in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful

activity, to wit: deposits, withdrawals and transfers of funds and monetary instruments that were the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

<u>COUNT TWENTY-THREE</u>
(Money Laundering)

39.   The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

40.   In or about and between April 2011 and December 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AUREL COJOCARU and FNU LNU, also known as "George Skyper" and "Tudor Barbu Lautaru," together with others, did knowingly and intentionally engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was

derived from specified unlawful activity, to wit: deposits, withdrawals and transfers of funds and monetary instruments that were the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343, and passport fraud, in violation of Title 18, United States Code, Section 1543.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1), 2 and 3551 et seq.)

<u>CRIMINAL FORFEITURE ALLEGATION AS TO</u>
<u>COUNTS ONE THROUGH FOURTEEN AND COUNT SEVENTEEN</u>

41.   The United States hereby gives notice to the defendants that, upon conviction of any of the offenses charged in Counts One through Fourteen and Count Seventeen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offenses, or conspiracy to commit such offenses, to forfeit any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of such offenses, including, but not limited to, the following:

<u>Money Judgment</u>

(a)   a sum of money equal to at least $3 million in United States currency, for which such defendants are jointly and severally liable; and

<u>Specific Properties</u>

(b) any and all funds on deposit at JP Morgan Chase in Accounts 483038684730 and 984108266, held in the name of "Daniel Marquez," and all proceeds traceable thereto, seized on or about June 22, 2011 pursuant to a court-authorized seizure warrant in the amount of at least $25,000 in United States currency;

(c) any and all funds on deposit at Citibank in Account 9995204618, held in the name of "Milan Kross," and all proceeds traceable thereto, seized on or about September 20, 2011 pursuant to a court-authorized seizure warrant in the amount of at least $32,350 in United States currency;

(d) any and all funds on deposit at JP Morgan Chase in Accounts 998512065 and 998512057, held in the name of "David Garcia" and "David Perez," respectively, and all proceeds traceable thereto, seized on or about October 11, 2011 pursuant to a court-authorized seizure warrant in the amounts of at least $87,095 and $40,020 in United States currency, respectively;

(e) any and all funds on deposit at Raiffeinsen Bank ZRT in Accounts HU57120105560012970900200001 and HU57105560129703900300008, held in the name of "Iona Cozma," and all proceeds traceable thereto, seized on or about December 20, 2011 pursuant to a court-authorized seizure warrant in the amounts of at least $20,000 and $45,700 in United States currency, respectively.

31

42. If any of the above-described forfeitable property, as a result of any act or omission of such defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p)).

<u>CRIMINAL FORFEITURE ALLEGATION AS TO</u>
<u>COUNTS FIFTEEN AND SIXTEEN</u>

43. The United States hereby gives notice to the defendants, that upon conviction of the offenses charged in Counts Fifteen and Sixteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section

32

982(a)(6), which requires any person convicted of any such offenses, or conspiracy to commit such offenses, to forfeit any and all conveyance, including any vessel, vehicle or aircraft used in the commission of the offenses, any property, real or personal, constituting or derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense, or any property used to facilitate, or intended to be used to facilitate, the commission of the offense.

44.    If any of the above-described forfeitable property, as a result of any act or omission of such defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

33

(Title 18, United States Code, Sections 982(a)(6) and 982(b); Title 21, United States Code, Section 853(p))

<u>CRIMINAL FORFEITURE ALLEGATION AS TO</u>
<u>COUNTS EIGHTEEN THROUGH TWENTY-THREE</u>

45.  The United States hereby gives notice to the defendants charged in Counts Eighteen through Twenty-Three that, upon conviction of any of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of any such offenses, or conspiracy to commit such offenses, to forfeit any and all property, real or personal, involved in such offenses, or any property traceable to such offenses.

46.  If any of the above-described forfeitable property, as a result of any act or omission of such defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

34

18, United States Code, Section 982(b), to seek forfeiture of any
other property of such defendants up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and
982(b); Title 21, United States Code, Section 853(p))


A TRUE BILL


FOREPERSON


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


35

F-#201IR00772
FORM DBD-34
JUN 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

NICOLAE POPESCU, DANIEL ALEXE, DMITRU DANIEL BOSOGIOU, EMIL BUTOI, AUREL COJOCARU, OVIDU CRISTEA, NICOLAE GHEROSILA, FABIAN MEME, CRISTEA MIRCEA, ION PLEPTEA, DRAGOMIR RAZVAN, NICOLAE SIMION and FNU LNU, *also known as "George Skyper" and "Tudor Barbu Lautaru,"*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(c), 982(a)(1), 982(a)(6), 1343, 1543, 1956(a)(1)(A)(i), 1956(a)(1)(B), 1957(a), 1957(b), 1957(d)(1), 2320(a)(1), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

A true bill.

_____
Foreman

Filed in open court this _____

of _____ A.D. 20 _____

_____ day,

_____
Clerk

Bail, $ _____

*Cristina M. Posa, Assistant U.S. Attorney, (718) 254-6668*